NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| APPLE BAIL BONDS, INC., | : | |
| Plaintiff, | : | Civil Action No. 14-cv-2733 (SRC) |
| v. | : | |
| | : | OPINION |
| CITY OF PATERSON, CITY OF PATERSON POLICE DEPT., ALL OUT BAIL BONDS, MOUHAMMAD MAHMOUD, and EMILIO LOZADA, and JOHN DOES A-Z, | : | |
| Defendants. | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion to dismiss filed by Defendants the City of Paterson, the City of Paterson Police Department, and Emilio Lozada ("the Paterson Defendants"), and upon the motion for judgment on the pleadings filed by Defendants All Out Bail Bonds and Mohammad Mahmoud. Plaintiff Apple Bail Bonds, Inc. opposes the motions. The Court has considered the parties' submissions. For the reasons that follow, the Court will grant Defendants' motions and dismiss Plaintiff's Complaint with prejudice.

**I.    BACKGROUND**

**A. Factual History**

This action involves the purported anti-competitive behavior of a municipal employee. The Court takes the following facts from the Complaint and assumes them to be true for purposes of these motions only.

1

Emilio Lozada books incoming prisoners for the Paterson Police Department. When he registers new inmates, he recommends to them that if they need help making bail, they should use All Out Bail Bonds ("All Out"). All Out is a business run by Mr. Mahmoud, a former Paterson police officer. Lozada also uses his position to obtain information from inmates which All Out can then use to solicit customers. For example, an individual named Juan Martinez was arrested in May of 2012. Lozada asked him for his mother's contact information, and All Out contacted Mr. Martinez's mother shortly thereafter.

Plaintiff Apple Bail Bonds competes with All Out. Plaintiff asserts that its business has suffered as a result of the recommendations that Lozada makes for All Out. In the Fall of 2010, Plaintiff complained about Lozada's conduct to the Paterson Police Department's Internal Affairs Division. A detective investigated the complaint, and he eventually determined that Lozada had indeed acted improperly and was accordingly subject to discipline. Plaintiff complained about Lozada's conduct again in the summer of 2012, and once more in early 2013. Today, Lozada retains his position and continues to recommend All Out to new inmates.

### B. Procedural History and Defendants' Motions to Dismiss

On April 29, 2014, Plaintiff filed a Complaint against the City of Paterson, the City of Paterson Police Department, All Out, Mr. Mahmoud, and Mr. Lozada. On August 14, 2014, the Paterson Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On August 21, Defendants All Out and Mr. Mahmoud moved to dismiss pursuant to Federal Rule of Civil Procedure 12(c).[1]

---

[1] Because Defendants answered the Complaint before moving to dismiss it, Rule 12(c) rather than Rule 12(b)(6) is the proper vehicle for dismissal. The same standard governs the two rules, however, and this distinction has no bearing on the Court's analysis. See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

2

The Paterson Defendants argue five main points to support their motion.  First, they assert that Plaintiff has failed to state an antitrust violation.  Second, they claim that Plaintiff's civil rights claims are both untimely and meritless.  They next urge that Plaintiff failed to file a timely notice of its tort claims, and that in any event, those claims are inadequately pleaded.  Fourth, they argue that Plaintiff has also failed to adequately plead unjust enrichment.  Finally, they note that Plaintiff cannot sue the Paterson Police Department because it is not a separate legal entity.  Defendants All Out and Mr. Mahmoud join in these arguments.

Plaintiff opposes the motions for corresponding reasons.  First, Plaintiff argues that it has adequately pleaded a violation of federal and state antitrust laws.  It further asserts that the Complaint lays out a timely and valid civil rights claim.  Next, Plaintiff contends that it filed a notice of its tort claims, and that it adequately pleaded various torts and unjust enrichment.

II.  DISCUSSION

A. Motions to Dismiss

A court may dismiss a claim only if, accepting all of the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the non-movant, it finds the claims to be facially plausible.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  The complaint must contain sufficient factual allegations to raise the plaintiff's right to relief above the speculative level.  Id. at 1965; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S.Ct. at 1964-65; see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Accordingly, the Court will identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 680). A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Iqbal, 556 U.S. at 679.

### B. Claims Against the Police Department

The Court notes at the outset that the City of Paterson Police Department is not a proper defendant, and accordingly, none of Plaintiff's claims against it may be sustained. A municipal police department is an administrative arm of the municipality, and not a separate legal entity which may be sued. See Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (noting that under Section 1983 "the Police Department cannot be sued."); Godley v. Newark Police Dep't, No. CIV. 05-806 (SRC), 2007 WL 269815, at *3 (D.N.J. Jan. 26, 2007) (granting summary judgment to Newark Police Department "because the Police Department cannot properly be sued" under Section 1983 or for state torts); Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (holding same) (citing N.J.S.A. 40A:14-118).

### C. The Alleged Antitrust Violation

Plaintiff's principal allegation is rooted in a theory of antitrust. Specifically, Plaintiff asserts that Defendants committed an antitrust violation through Mr. Lozada's attempts to divert bail business to All Out. To plead an antitrust violation under Section 1 of the Sherman Act, Plaintiff must allege facts which demonstrate: "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action." Queen City Pizza v. Domino's Pizza, 124 F.3d 430, 442 (3d Cir. 1997). The Court finds that Plaintiff has failed to satisfy any of these four elements.

4

The first element necessitates that Plaintiff plead the existence of an agreement. In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 267 (3d Cir. 2009); Englert v. City of McKeesport, 872 F.2d 1144, 1150 (3d Cir. 1989) ("The first of these four elements requires some contract, combination, or conspiracy between the defendants[.]"); see also Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984) (asserting that there is an agreement under the Sherman Act if "the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement") (internal citation and quotation marks omitted). Although pleading an antitrust violation is generally subject to the notice-pleading standard, see Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 317 (3d Cir. 2007), in this context the Supreme Court has looked to see whether an allegation of an agreement provides specifics, such as the "time, place, or person[s] involved in the alleged conspiracies." Twombly, 550 U.S. at 565, n.10.

Here, Plaintiff fails to provide any facts suggesting the existence of an agreement among Defendants to engage in anti-competitive or monopolistic conduct. Plaintiff attempts to satisfy this requirement when it pleads, "Defendants unlawfully and intentionally combined, contracted and/or conspired with each other in restraint of trade and commerce" (Compl. ¶ 18), and "Defendants [] conspired to monopolize the marketplace by excluding Plaintiff from competition" (Compl. ¶ 20). Together, however, these statements form the exact kind of "conclusory allegation of [an] agreement" which this Court must disregard. Twombly, 550 U.S. at 557; see also W. Penn Allegheny Health Sys. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010) ("[C]ourts should disregard the complaint's legal conclusions[.]"). The Complaint lacks any facts of an agreement, and Plaintiff has thus left an element of its claim unmet. See Burtch v. Milberg Factors, 662 F.3d 212, 225 (3d Cir. 2011) (dismissing complaint whose allegation of an

5

agreement failed to "specify a time or place that any actual agreement [] occurred . . . nor [] indicate that any particular individuals" were involved); Twombly, 550 U.S. at 565, n.10.

The second element generally requires Plaintiff to allege facts which demonstrate and define the relevant marketplace for purposes of an antitrust analysis. Syncsort Inc. v. Sequential Software, 50 F. Supp. 2d 318, 327 (D.N.J. 1999) (citing Queen City Pizza, 124 F.3d at 436) ("An antitrust plaintiff must plead facts sufficient to demonstrate a viable relevant market."). Dismissal is warranted if the plaintiff fails to plead that its product has a roughly equivalent use as the defendant's. Queen City Pizza, 124 F.3d at 436 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products . . . a motion to dismiss may be granted."). Similarly, to establish standing to sue, a plaintiff must plead that the defendants are its competitors or consumers within the market. See Eisai Inc. v. Sanofi-Aventis U.S., LLC, No. CIV. 08-4168 (MLC), 2010 WL 3172187, at *3 (D.N.J. Aug. 10, 2010) ("[Plaintiff] must be either a competitor or consumer of the defendant.") (internal citation and quotation marks omitted).

Here, Plaintiff fails to plead any facts which define the relevant market or suggest that the Paterson Defendants are its competitors or consumers. The Complaint refers in passing to "the relevant marketplace" and "the relevant product and geographic markets" (Compl. ¶¶18-20). It does not, however, define these terms. Plaintiff also refers in passing to the "bails from the Paterson Police holding cells" (Compl. ¶ 2), but it makes no attempt to frame the market as such. Mentioning key words falls short of defining the essential terms of an antitrust claim, and such a failure justifies dismissal. See Queen City Pizza, 124 F.3d at 436. Additionally, Plaintiff has not

pleaded that the City of Paterson nor Lozada are its competitors or consumers, which similarly weighs toward dismissal with respect to those Defendants.

Next, fundamentally, Plaintiff has failed to plead an "antitrust injury." Plaintiff must demonstrate that it has suffered the kind of harm that the antitrust laws protect against, and that the harm was caused by Defendants' conduct. See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, 171 F.3d 912, 924-25 (3d Cir. 1999) (citing Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 537-38 (1983)).

Plaintiff writes that it "suffered the type of harm the antitrust laws were intended to prevent." (Compl. ¶ 23). Yet the Court must disregard such bare recitations of the elements, and it must instead look to whether Plaintiff presents facts plausibly demonstrating an antitrust injury and causation. See Twombly, 127 S.Ct. at 1964-65; Iqbal, 556 U.S. at 680. Again, Plaintiff writes that it suffered "financial distress" and "devastating" consequences due to Lozada's conduct, and that there "can be nothing worse for Plaintiff's business[.]" (Compl. ¶¶ 12, 16). These general statements, however, cannot overcome "the tenuous and speculative character of the relationship between the alleged antitrust violation and the [] alleged injury" here. Associated General Contractors, 459 U.S. at 545. Plaintiff has not pleaded any facts suggesting that Lozada actually caused Plaintiff financial harm. Crucially, it has not alleged that an inmate ever solicited All Out's business instead of Plaintiff's because of Lozada's input. Quite the opposite, the few facts Plaintiff does provide suggest that some consumers actually chose to contact Plaintiff after Lozada recommended All Out.

That raises a final, elementary flaw in Plaintiff's theory. Plaintiff has not asserted that Lozada coerced anyone, or that anything stopped the inmates from choosing to take-or-leave his informal recommendation. It is axiomatic that "there can be no restraint of trade without a

7

restraint." DeGregorio v. Am. Bd. of Internal Med., No. CIV. 92-4924 (SRC), 1993 WL 719564, at *8 (D.N.J. Oct. 1, 1993) (internal citation and quotation marks omitted).  If Lozada's suggestions here constituted an antitrust violation, so too would a host of other permissible interactions.  A hotel employee could not, for example, recommend to its guests that they visit one local restaurant over another, or that they use a particular taxi-cab company to get to the airport.  The kind of word-of-mouth recommendations at issue here comprise an integral part of, rather than a hindrance to, a functioning and competitive market.

Plaintiff also cites Section 2 of the Sherman Act.  That claim fails for the same reasons just discussed.  Section 2 also requires an agreement, which Plaintiff has not pleaded.  See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, 602 F.3d 237, 253 (3d Cir. 2010) (noting that Section 2 needs "an agreement to monopolize").  It also requires Plaintiff to define the relevant marketplace, which it has not done.  See United States v. Dentsply Int'l, 399 F.3d 181, 187 (3d Cir. 2005) (asserting under Section 2 that "[d]efining the relevant market is an important part of the analysis.").  And it hinges on the existence of an injury, which Plaintiff has failed to adequately plead.  See Howard, 602 F.3d at 253.  All told, Plaintiff has not stated a violation of either section of the Sherman Act.

### D.  The Alleged Civil Rights Violation

Plaintiff next asserts that Lozada's recommendations violated its civil rights, and it seeks to recover under Section 1983 of the Civil Rights Act.  The Court finds that Plaintiff has not identified or articulated the infringement of any of its legal rights.  "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere[.]" Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Here, Plaintiff has failed to plead facts suggesting that it suffered any harm attributable to Lozada, let alone

harm that can be framed as a constitutional violation.  In its brief, Plaintiff string-cites to black-letter law on constitutional provisions, including the Due Process Clause of the Fourteenth Amendment and the Commerce Clause.  Yet Plaintiff does not apply those provisions to the circumstances presented.  That is because, the Court finds, the conduct at issue here did not violate Plaintiff's rights.  See generally Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (noting that substantive due process claim pertains to government conduct that "shocks the conscience").  Plaintiff therefore cannot recover under Section 1983.

Even if Plaintiff had identified the violation of a right, its claim suffers from other shortcomings.  There is no respondeat superior liability under Section 1983.  Iqbal, 556 U.S. at 676; Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).  The City of Paterson can only be liable for an official "policy statement, ordinance, regulation, or decision," or for a "governmental 'custom' even [if] such a custom has not received formal approval through the body's official decisionmaking channels."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978).  There is not the slightest indication that the City adopted a policy of recommending All Out, nor that local custom encouraged such recommendations.  The City can be liable only if a municipal custom was the "moving force" behind Lozada's conduct.  City of Canton, Ohio v. Harris, 489 U.S. 378, 379 (1989).  Quite distinctly, Plaintiff hints that Lozada made recommendations to receive personal financial kickbacks, not to further any municipal practice, and an official investigation indeed found Lozada's conduct to violate local practices.

Finally, it is unclear whether Plaintiff's claim is timely.  A two-year statute of limitations applies, Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989), and well over two years passed after Plaintiff learned of Lozada's conduct and when it filed the Complaint.  Plaintiff's recovery would therefore be limited only to any discrete acts that occurred within the

9

two years before the filing of the Complaint.  See O'Connor v. City of Newark, 440 F.3d 125, 129 (3d Cir. 2006) ("If the allegations in [the] complaint are discrete, then each gave rise to a cause of action at the time it occurred.").

### E.  The State Claims

Plaintiff also asserts numerous claims in its Complaint that are based on New Jersey law.  Specifically, Plaintiff asserts that Defendants violated the New Jersey Antitrust Act and the New Jersey Civil Rights Act, that they committed numerous state-law torts, and that Lozada has been unjustly enriched through his conduct.  Having decided to dismiss each of Plaintiff's federal claims for the reasons discussed in this opinion, the Court will also dismiss the state claims without prejudice.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

### III.  CONCLUSION

For the reasons above, the Court will grant Defendants' motions to dismiss Plaintiff's Complaint.  The Court has reviewed Plaintiff's federal claims and finds that no restatement of the allegations could successfully plead a federal antitrust or civil rights violation.  Because Plaintiff cannot cure the deficiencies outlined above, the Court will dismiss the federal claims with prejudice.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (requiring district court to permit leave to amend complaint unless it would be "futile" to do so).  Nothing in this opinion forecloses Plaintiff from refiling its state claims in state court.  An appropriate Order will be filed.

 s/ Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

Dated:  December 10, 2014